**Dated: March 2, 2022**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Ellen V. Elam, | ) | Case No. 21-10065 -JDL |
| | ) | Ch. 7 |
| Debtor. | ) | |
| | ) | |
| Christ Center of Divine | ) | |
| Philosophy, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 21-1044-JDL |
| | ) | |
| Ellen V. Elam | ) | |
| | ) | |
| Defendant | ) | |

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

This is an action seeking a determination that a federal court judgment for copyright infringement which Plaintiff obtained against the above referenced Defendant and Debtor ("Elam") is a non-dischargeable debt. Plaintiff has moved for summary judgment asserting,

pursuant to the principles of collateral estoppel, that the factual issues determined in the Federal District Court are sufficient to fully adjudicate the non-dischargeability of the District Court judgment as a debt for "willful and malicious injury to personal property" under 11 U.S.C. § 523(a)(6).[1]  Thus, Plaintiff asserts that there are no material facts in dispute and that it is entitled to judgment as a matter of law pursuant to Fed.R.Bankr.P. 7056(b).[2]

In opposing summary judgment, Elam argues that the judgment against her was rendered by default, the issues were never litigated and that she "requests that the Bankruptcy Court give her an opportunity to show the Court that she did not willfully infringe" on Plaintiff's rights.

Before the Court for consideration are: *Christ Center of Divine Philosophy, Inc.'s Motion for Summary Judgment* [Adv. Doc. 18];[3]  Debtor's *Response to Plaintiff's Motion For Summary Judgment* [Adv. Doc. 19]; and *Christ Center of Divine Philosophy, Inc.'s Reply in Support of Motion for Summary Judgment* [Adv. Doc. 20].  This Opinion and Order constitutes the Findings of Fact and Conclusions of Law as required by Rule 7052.

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

[3] References herein to the docket of this adversary proceeding appear in the following form: Adv. Doc. __ .

References herein to the docket of this Chapter 7 case appear in the following form: BK 21-10065 Doc. __ .

157(a) and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a). This matter seeking a determination of an objection to discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which this Court has authority to enter a final judgment. Venue is proper pursuant to 28 U.S.C. § 1409(a). Furthermore, in accordance with Rules 7008 and 7012(b), Plaintiff in its *Complaint* and Defendant/Debtor in her *Amended Answer* have consented to the entry of final orders or judgment by this Bankruptcy Court.

### III. Facts[4]

1. On January 28, 2016, Plaintiff commenced a civil action against Elam for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*., captioned *"Christ Center of Divine Philosophy, Inc., an Oklahoma Corporation, Plaintiff v. Ellen Veronica Elam, Defendant,"* Case No. CIV-16-65-D, in the United States District Court for the Western District of Oklahoma (the "District Court") (the "District Court Action").[5] In its sixty-

---

[4] The "Facts" for summary judgment purposes in this case consist almost entirely of the procedural history of the case in the District Court Action. This history of the litigation is necessary to address the applicability of the elements of issue preclusion/collateral estoppel, such as "identity of the issues" between the District Court Action and the Bankruptcy Court, whether Elam had the "opportunity to be heard" in the District Court Action and whether the similar issues in the District Court Action and this Court were "actually litigated."

[5] References herein to the docket of the District Court Action appear in the following form: District Court Action Doc. ___.

This Court is entitled to take judicial notice of both its own docket sheets and other state or federal court docket sheets. *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."). *Adams v. Watts*, 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie*, 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts).

five (65) Count *Complaint,* Plaintiff alleged that Elam had infringed upon the Plaintiff's

rights in federally registered copyrighted books and sound recordings. [Adv. Doc. 18-1].

Plaintiff alleged that it owned by assignment thirty-one (31) copyrighted books or sound

recordings, and that Elam published and sold three books containing its copyrighted

material. *Id*.   Plaintiff sought injunctive relief, actual damages, statutory damages and

attorneys fees and costs all pursuant to the Copyright Act, 17 U.S.C. §§ 504 and 505.

2. In the District Court Action, on August 25, 2016, Elam was served with Summons

and a copy of the *Complaint*.   [District Court Action Doc. 6].   The time within which Elam

was required to answer or otherwise respond to the *Complaint* expired on September 15,

2016.  Elam failed to file an answer or otherwise respond as required.

3. On October 3, 2016, the Plaintiff moved for the entry of default by the Clerk

pursuant to Rule 55 of the Federal Rules of Civil Procedure.  [District Court Action Doc. 8].

The Clerk entered default against Elam on October 7, 2016.  [District Court Action Doc. 9].

4. On November 22, 2016, Plaintiff filed its *Motion for Default Judgment*. [District

Court Action Doc. 10].  On November 30, 2016, Plaintiff gave Elam Notice of the filing of

its *Motion for Default Judgment*.  [District Court Action Doc. 11].

5. On February 10, 2017, the District Court entered its thirteen (13) page *Order*

granting the Plaintiff's Motion for Default Judgment.  [District Court Action Doc. 13].  In its

*Order*, the Court found as follows:

> The Court accepts as true Plaintiff's allegations that it owns the
> legal copyright to each of the publications in question.  Plaintiff
> has provided copyright registrations of the subject material
> accompanied by copies of the Defendant's infringing works.
> See *id.* at   Exs.   1-7.   The   Court,   thus,   concludes   that
> Defendant   is   liable   for   these   instances   of   copyright

4

infringement. In making this determination, the Court also concludes that Defendant *infringed these copyrights willfully*. Defendant's default and her decision not to defend against these allegations are grounds for concluding that her actions were willful. *See, e.g., Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1313 (S.D. Fla. 2003) ("[T]his Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default.") (collecting cases); *Malletier v. Artex Creative Int'l Corp.*, 687 F.Supp.2d 347, 354 (S.D. N.Y. 2010) (inferring willfulness from defendants' default in trademark infringement action).

****

Accordingly, it is evident from the limited record before the Court that entry of default judgment against Defendant is appropriate. First, the evidence suggests that Plaintiff has suffered quantifiable harm, and that it will continue to do so absent the entry of default judgment. Plaintiff would also be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery absent the entry of default judgment. There is nothing in the record to suggest that Defendant has a triable defense as to liability; specifically, there is no evidence of a legitimate contractual dispute between the parties. Likewise, there is nothing in the record to suggest that the property at issue was unprotected by the copyright laws. ***

(Emphasis added.).

6. On February 10, 2017, Pursuant to the Clerk's entry of default and the Court's *Order* granting Plaintiff's *Motion for Default Judgment*, the District Court entered a *Default Judgment* for Plaintiff against Elam for statutory damages in the amount of $80,000. [District Court Action Doc. 14].

7. On February 13, 2017, Elam, *pro se*, filed her *Motion to Vacate and Dismiss Complaints* asserting that the *Default Judgment* against her should be set aside and the case dismissed for "(1) fraud on the court, (2) false statement in summons; (3) inexcusable

5

negligence of entry #7 and (4) statute of limitations passed by 10 months." [District Court Action Doc. 15].  On  March 7, 2017, Elam filed a *Clarification of Motion to Vacate and Dismiss Complaints* in which she asserted that there had been an improper service of process and that she had a meritorious defense. [District Court Action Doc. 17].  On March 24, 2017, Elam filed her *Supplement to Motion to Vacate and Dismiss Complaints* again asserting improper service of process and asserting that the misspelling of her name and/or the case number "caused the Defendant to delay any future response believing the case was definitely illegal, so therefore, defendant was convinced that she was not liable for any judgment." [District Court Action Doc. 20].  On April 7, 2017, Elam filed *A Letter to the Court with Additional Evidence in Regards to Improper Delivery of Summons*. [District Court Action Doc. 21].

8.  On May 1, 2017, the District Court entered an *Order* denying *Defendant's Motion to Vacate and Dismiss Complaints* (and associated motions) finding that Elam's arguments "lack[ed] merit" because "she has not satisfied the threshold inquiry of showing her culpable conduct did not cause the default." [District Court Action Doc. 23].  The Court further found:

> Lastly, in conclusory fashion, Defendant states the copyrights at issue are invalid and Plaintiffs' claims are barred by the statute limitations.  As with her other arguments, Defendant has presented no persuasive evidence in support of these contentions, and the Court finds they do not affect the validity of the default judgment obtained herein.

9.  On May 15, 2017, Plaintiff filed its *Motion for Attorney Fees and Costs* seeking fees of $35,351.75 and costs in the amount of $911.91 pursuant to the Copyright Act, 17 U.S.C. § 505. [District Court Action Doc. 24].  Elam did not respond to the Plaintiff's *Motion*

*for Attorneys Fees and Costs*. On September 21, 2017, the Court entered its *Order* granting in part and denying in part the Plaintiff's motion, awarding attorney's fees in the amount of $30,476.25 and denying the Plaintiff's request for reimbursement of costs. [District Court Action Doc. 31]. In its *Order*, the Court stated as follows:

> Thus, based on the Court's findings in the record, Defendant deliberately and knowingly infringed upon Plaintiff's copyrights; subsequent to such infringement, Defendant forced Plaintiff to retain lawyers and to resort to the courts to enforce its proprietary interest in the copyrights. Defendant has come forward with no justification for her actions, and has no colorable grounds for defense. Accordingly, applying the foregoing factors governing attorney's fees awards, the court finds an award of fees is appropriate. (Citations omitted).

10. On July 7, 2017, Plaintiff filed two motions: a *Motion for Order to Modify Injunction Based on Defendant's Willful Violation of Court's Injunction and Continuing Infringements of Plaintiff's Copyrights* [District Court Action Doc. 25] and a *Motion to Hold Defendant in Contempt Based on Her Willful Violation of the Court's Injunction and Continuing and New Infringements of Plaintiff's Copyrights.* [District Court Action Doc. 27]. Elam filed a response to both motions (albeit in one pleading) entitled *Defendant Elam's Response in Opposition to Plaintiff's Motion to Hold Defendant Elam In Contempt*. [District Court Action Doc. 28].

In the *Default Judgment* of February 10, 2017, the Court had awarded statutory damages totaling $80,000 and entered an injunction which, among other things, enjoined Elam from further infringing upon four of the copyrighted works. [District Court Action Doc. 13.] The Court had denied the Plaintiff's request to modify the injunction to include all thirty-one (31) publications as there were insufficient grounds to warrant such expansive

relief. See, *Order*, April 18, 2017 [District Court Action Doc. 22].    In the Plaintiff's subsequent *Motion to Modify Injunction* the Plaintiff asserted that Elam had violated the injunction by (1) failing to deliver or destroy the infringing material, (2) continuing to advertise and market on numerous websites the same infringing materials she was specifically directed to deliver or destroy under the Court's *Default Judgment* and (3) publishing and actively selling three additional infringing books [District Court Action Doc. 25]. In her Response, Elam asserted that she had not violated the Court's *Order*; that the three "new" books Plaintiff cites were published before the injunction was issued; that she is neither in possession of any infringing material nor is she actively selling any book on the Internet; and any sale on the Internet was being done without her knowledge or consent [District Court Action Doc. 28].

On October 18, 2017, the Court entered its *Order* finding that Elam had violated the previous injunction and "in order to adequately protect Plaintiff's interest in the remaining works, and ensuring against needless expenditure of resources and time," the District Court modified its previous *Default Judgment* to enjoin Elam from directly or indirectly infringing Plaintiff's rights in all thirty-one (31) copyrighted publications identified in Plaintiff's *Complaint* and three additional infringing books. [District Court Action Doc. 32].

11. In conjunction with the entry of the *Order* referred to in the above paragraph [District Court Action Doc. 32], on October 18, 2017, the Court entered its *Amended Default Judgment* reiterating its previous award of statutory damages in the amount of $80,000 and expanding the scope of the injunctive relief. [District Court Action Doc. 33].

12. On October 24, 2017, Elam filed her one hundred-sixteen (115) page (including

8

exhibits) *Motion for Reconsideration on Changes in Injunctive Order* which challenged not only the Court's recent modification of its injunction but also her arguments disputing the validity of the Plaintiff's claims of copyright. [District Court Action Doc. 34].   On April 12, 2018, the Court entered its *Order* denying Elam's motion to reconsider on the grounds that (1) such motion "seeks to re-litigate the validity of Plaintiff's copyright registrations, despite the fact the default judgment has been entered and the merits of the case have long been confessed" and (2) Elam's attempt to introduce "newly discovered evidence" was without merit as Elam "does not contend she was either unable to or prohibited from obtaining any of the evidence in question prior to the entry of the default judgment." [District Court Action Doc. 45].

13. On May 11, 2018, Elam filed her *Notice of Appeal* to the 10th Circuit Court of Appeals, appealing the Court's *Order* denying her motion to reconsider. [District Court Action Doc. 46].[6]  On February 15, 2019, the 10th Circuit Court of Appeals entered its *Order and Judgment* affirming the District Court's *Order* denying Elam's motion to reconsider [District Court Action Doc. 58].   The Circuit Court noted that "Elam stipulates that the default judgment precludes her from contesting her liability regarding the four particular copyrighted works covered by the original injunction," and that she failed to show that the evidence she presented was "newly discovered or that she diligently yet unsuccessfully attempted to discover the evidence."

14. On April 12, 2019, Elam, for the first time represented by counsel, filed a four-hundred (402) page (including exhibits) *Motion of the Defendant for Relief From Judgment.*

---

[6] 10th Circuit Court of Appeals, Appellate Case No. 18-6089.

[District Court Action Doc. 60].  The motion was predicated upon the then recently decided United States Supreme Court decision in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC,* __U.S. __ , 139 S.Ct. 881 (2019) wherein the Court held that under the Copyright Act a party may commence an action for infringement only after the Copyright Office has registered a copyright.   In her motion, Elam asserted that the Plaintiff's *Complaint* had not alleged that the Copyright Office had issued Certificates of Registration regarding the subject material, and thus *Fourth Estate* should be applied retroactively to divest the District Court of jurisdiction to determine copyright infringement.  The Plaintiff filed a response asserting this fourth attempt to reverse the Court's decision must be denied as Elam has failed once again "to present any compelling, exceptional circumstance warranting the extraordinary relief she requests."  [District Court Action Doc. 61].

   On December 2, 2019, the  District Court entered its *Order* denying Elam's *Motion for Relief from Judgment,* finding that Elam's motion "simply re-litigates issues already decided" and "made no attempt to show that the evidence raised was 'newly discovered evidence or evidence previously unavailable through due diligence.'" [District Court Action Doc. 68].  Elam appealed the *Order* to the Tenth Circuit Court of Appeals which, on October 15, 2020, affirmed the District Court's *Order* [District Court Action Doc. 82].

   15. On January 13, 2021, Elam filed her petition for relief under Chapter 7 of the United States Bankruptcy Code. [BK 21-10065 Doc. 1].

## IV. Discussion

   Plaintiff has filed this adversary action seeking to have this Court determine that the

District Court judgment against Elam for copyright infringement is non-dischargeable pursuant to § 523(a)(6) as a debt resulting from "willful and malicious injury." The question before the Court is twofold: (1) whether the District Court's judgment made sufficient findings of willful and malicious conduct and, if so, (2) whether such findings are entitled to issue preclusion (collateral estoppel)[7] in this non-dischargeability adversary proceeding.

### A. Summary Judgment Standard

"Summary judgment is appropriate only if the pleadings and submissions... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Rule 7056; *In re Wormington*, 555 B.R. 794, 797 (Bankr. W.D. Okla. 2016). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) ("[T]he burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the nonmoving party's case."). The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598 (1970); *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991).

The denial of summary judgment requires existence of genuine material issues that

---

[7] The Tenth Circuit refers to collateral estoppel as "issue preclusion" and res judicata as "claim preclusion."

11

"can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). "[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

### B. Law of Collateral Estoppel

Res judicata has two branches: claim preclusion; and collateral estoppel/issue preclusion. See *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161 (2008). Both branches are applied in bankruptcy. See *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654 (1991) ("[P]rinciples of collateral estoppel apply in bankruptcy proceedings.") (issue preclusion applied); *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205 (1979) (claim preclusion applied); *Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605, 606 (10th Cir. 1991).

The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies. See *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304

(2000); *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.,* 439 F.3d 653, 662 (10th Cir. 2006). In other words, the doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit. The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to such relief. *See Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668 (1990).

The preclusive effect of a prior federal judgment is determined by federal law. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324 n. 12, 91 S.Ct.1434 (1971); *In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995). In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991), the Supreme Court adopted for federal courts the formulation of the collateral estoppel doctrine as expressed by the Restatement (Second) of Judgments § 27 (1982) which states the general rule of collateral estoppel as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim." Courts have developed a four-pronged test for federal collateral estoppel to apply:

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with the party in the previous action.

*Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct.1189 (1970); *Park Lake Resources LLC v. US Department of Agriculture,* 378 F.3d 1132, 1136 (10th Cir. 2004)*; Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995). Element four of the test is satisfied here as the parties are the same as in the previous District Court action. The Court must

13

determine whether the judgment against Elam satisfies the remaining three elements for collateral estoppel to apply.

### 1. Full and Fair Opportunity to Litigate

The District Court found that Elam had been served with summons and a copy of the *Complaint* on August 25, 2016. Elam did not respond to the *Complaint*. Plaintiff did not move for the Clerk to make Entry of Default until October 3, 2016, and did not file its *Motion for Default Judgment* until November 22, 2016. Elam also failed to respond to the Plaintiff's *Motion for Default Judgment*, a copy of which was served upon her by regular and certified mail. It was not until February 10, 2017, five and a-half months after Elam had been served with process, that the court entered its *Order* finding Elam in default and entering the corresponding *Default Judgment*. Three days later (the first business day) after entry of the *Default Judgment* Elam filed her first of several pleadings seeking to vacate the judgment, one of which asserted that the reason for her default was that the misspelling of her name and/or the case number "caused (her) to delay any future response believing the case was definitely illegal, so therefore, (she) was convinced that she was not liable for any judgment." That presumptuous, and patently mistaken, assumption on Elam's part lead to the entry of the *Default Judgment*. After the *Default Judgment*, Elam filed nearly a dozen pleadings, comprised of hundreds of pages of exhibits, in the District Court and two appeals to the Circuit Court attacking the *Default Judgment* and *the Amended Default Judgment* on the bases of her alleged substantive defenses. All her efforts were considered by the District and Circuit Court and found wanting.

14

The "full and fair opportunity to litigate" element of the issue preclusion doctrine "is rooted in due process concerns." *South Atlanta Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo),* 353 B.R. 534, 553 (Bankr. N.D. Ohio 2006) (observing that "the key to [the] full and fair opportunity analysis is determining whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination" and concluding that this standard was satisfied where a default judgment against the debtor's corporation resulted from the debtors "own failure to act, not from a lack of opportunity to litigate the issue"); *State of Ohio v. Foster (In re Foster),* 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002) (finding that "if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action"). The Court finds that Elam was afforded an opportunity to participate in the litigation both by the summons and by notice of the Plaintiff's *Motion for Default Judgment.*

In her *Response to the Motion for Summary Judgment*, Elam points out that she was not represented at the time of the entry of the *Default Judgment*. "[F]ederal preclusion law provides that lack of a legal representation in a civil matter does not destroy the 'full and fair opportunity to litigate' element of issue preclusion." *In re Yu*, 545 B.R. 633, 640 (Bankr. C.D. Cal. 2016) (citing *Larson v. United States*, 89 Fed.Cl. 363, 395 (2009) *aff'd* 376 Fed.Appx. 26 (Fed. Cir. 2010) (noting that plaintiffs who chose to proceed *pro se* had full and fair opportunity to litigate). There is no doubt in this Court's opinion that Elam was afforded a fair opportunity to litigate both before and after default was entered and indeed participated fully by filing numerous voluminous pleadings asserting her substantive

15

defenses to the copyright infringement allegations.

### 2. Identity of the Issues

The "identity of issues" analysis requires inquiry into the actual facts found or presented in the earlier litigation. *Jet, Inc., v. Sewage Aeration Systems,* 223 F.3d 1360, 1366 (Fed. Cir. 2000). In the present case, the issue becomes whether the findings of the District Court were such as to support the necessary elements of establishing Plaintiff's objection to dischargeability under § 523(a)(6). Section 523(a)(6) of the Bankruptcy Code provides an individual debtor may not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willfulness" and "maliciousness" are analyzed separately.

### a. Section 523(a)(6) – Willful and Malicious Injury

Non-dischargeability under this subsection requires that the debtor's actions be both "willful and malicious." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. (2004) ("Without proof of *both* [willful and malicious elements under 523(a)(6)], an objection to discharge under that section must fail."); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) (stating that "[i]n the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements–that the injury was both 'willful' and 'malicious.'").

The "willful" component of § 523(a)(6) requires intent to injure. *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974 (1998). As the Supreme Court explained, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to

injury." *Id.* A deliberate or intentional injury requires that the actor desired or intended that the resulting consequences of the act occur, not simply that the actor intentionally engaged in the act itself. 523 U.S. at 61-62. Typically, a non-dischargeable debt under § 523(a)(6) "triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* at 61.

The "malicious" component of § 523(a)(6) requires the court to examine the debtor's motives and any claimed justification or excuse for taking action while desiring, knowing or intending that the action will cause the resulting harm. *Dorr, Bentley & Pecha, CPA's, P.C. v. Pacek (In re Pacek),* 983 F.2d 1524, 1527 (10th Cir. 1993). The "malicious" component of § 523(a)(6) requires more culpable conduct than recklessness. *In re Cardoza*, 615 B.R. 901, 908 (Bankr. D. N.M. 2020). The "malicious" element requires an act taken in conscious disregard of one's duties and without just cause or excuse, even the absence of personal hatred, spite or ill will, or wrongful and without just cause or excuse. *In re Smith*, 618 B.R. 901, 919 (10th Cir. BAP 2020) (citing *MarketGraphics Research Group, Inc. v. Berge (In re Berge)*, 953 F.3d 907, 915 (6th Cir. 2020) and *Murphy v. Snyder (In re Snyder),* 939 F.3d 92, 105 (2nd Cir. 2019)); *In re Parra*, 483 B.R. 752, 773 (Bankr. D. N.M. 2012) ("This Court concludes that the 'malicious' component of 11 U.S.C. § 523(a)(6) requires an intentional, wrongful act, done without justification or excuse.").

At first glance it appears that the issues decided in the District Court and the issues presented here are in substance the same because the element of willfulness was specifically found there, and it is needed here in order for the debt to be found non-dischargeable under § 523(a)(6). Several of the District Court Findings and Conclusions

either explicitly or inferentially referenced that Elam's infringement was intentional or granted relief that was predicated on intentional infringement.  In the *Default Judgment* entered on February 10, 2017, the District Court specifically found that Elam was liable for copyright infringement, and "the Court also concludes that Defendant infringed these copyrights *willfully*" and "Defendant's default and decision not to defend against these allegations are grounds for concluding that her actions were *willful.*" [See, Facts ¶ 5 above]. In the District Court's *Order* granting the Plaintiff's *Motion for Attorney's Fees and Costs* the District Court also found that "Defendant *deliberately and knowingly* infringed upon Plaintiff's copyrights...." [See, Facts ¶ 9, above].  The question is whether the District Court's findings of "willful," "deliberate," and "knowingly" in the copyright context are sufficient (equivalent) to meet the "willful" and "malicious" standards for purposes of § 523(a)(6).

Plaintiff asserts that the District "Court found that more than once Elam acted "willfully' as that term is interpreted under 11 U.S.C. § 523(A)(6) (sic)... (and) [t]his is the exact issue for which Christ Center seeks to invoke collateral estoppel." [Adv. Doc. 18, p. 8].  That is not the law, however.  "The term 'willful' as used in copyright infringement cases is not equivalent to 'willful' as used in determining whether a debt is non-dischargeable under the bankruptcy code." *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008).  Courts have recognized that a finding of "willfulness" in the context of a copyright infringement action can be based on either "intentional" behavior, or merely "reckless" behavior. *Id*; *Island Software and Computer Service, Inc. v. Microsoft Corp*., 413 F.3d 257, 263 (2nd Cir. 2005); *In re Seagate Technology, LLC,* 497 F.3d 1360, 1370 (Fed. Cir. 2007).  Even though

18

negligence or recklessness is sufficient for a finding of willful copyright infringement, the Supreme Court has clearly held that injuries resulting from negligence and recklessness are not sufficient to be considered for willful injuries under § 523(a)(6) and therefore insufficient to merit an exception to dischargeability. *Geiger*, 523 U.S. at 61-62. "Therefore, if a finding of 'willful' copyright infringement is based merely on reckless behavior, the resulting statutory award (for damages) would not fit into the § 523(a)(6) exception." *Barboza,* 545 F.3d at 708.

Notwithstanding, this does not mean a copyright or trademark infringement can never have preclusive effect in a § 523(a)(6) nondischargeability proceeding. Rather, collateral estoppel may be appropriate if there's ample support in the record for concluding that the District Court based its Copyright Act judgment on the defendant's *willful and malicious* conduct. *In re Mucci,* 458 B.R. 802, 811-13 (Bankr. D. Conn. 2011). As stated above, § 523(a)(6) requires the injury suffered by the Plaintiff be *both* willful and malicious. The Plaintiff argues that the injury it sustained was "willful" because the District Court found the same in the *Default Judgment*. Plaintiff does not address the separate requirement of maliciousness.

If this Court had before it simply the word "willful" in the District Court's finding in the *Default Judgment* that Elam "infringed these copyrights *willfully,*" it could not find that the "willful" requirement of § 523(a)(6) was met. But the District Court did make a finding that clearly shows its use of the word "willfully" could not be interpreted as encompassing merely negligent or reckless behavior. In its *Order* granting the Plaintiff's *Motion for Attorneys Fees*, the District Court elaborated its prior use of the term "willfully" in the

19

*Default Judgment* by also finding that Elam had infringed the copyright "*deliberately and knowingly.*"  It is therefore this Court's conclusion that the District Court could not have found that Elam had merely negligently or recklessly infringed the copyright.  Elam's infringement was therefore an intentional tort meeting both the "willful" and "malicious" requirements of § 523(a)(6).  As stated in *In re Christina,* 2011 WL 766966 at *4 (Bankr. S.D. Fla. 2011):

> When the injury alleged is copyright infringement, a plaintiff must show that the debtor intentionally infringed the plaintiff's copyright. *Star's Edge, Inc. v. Braun (In re Braun),* 327 B.R. 447, 450–51 (Bankr. N.D. Cal.2005).  Focusing on the debtor's intent to perform an act—the infringement—is appropriate in this context because unlike other contexts in which a debtor's intentional act may or may not cause injury, intentional copyright infringement does not have "uncertain or variable outcomes." *Id.*  In other words, intentional infringement of a copyright or trademark is "tantamount to intentional injury under bankruptcy law" because "it is impossible to separate the 'conduct' of trademark infringement from the 'injury' of trademark infringement when considering the defendant's intent." *Smith v. Entrepreneur Media, Inc.,* 2009 WL 6058677, at *9-10 (9th Cir. BAP 2009). Furthermore, a debtor who intentionally infringes a copyright "is charged with the knowledge of the natural consequences of his actions[,]" such as the harm that will result from the infringement. *Deerey,* 371 B.R. at 534 (citing *In re Cohen,* 121 B.R. 267 (Bankr. E.D. N.Y.1990)).  Thus, a debtor who intentionally infringes a copyright is charged with the knowledge that injury to the copyright holder is sure, or substantially certain, to result.

In *In re Braun*, 327 B.R. 447 (Bankr. N.D. Cal. 2005), in the Court's language, the issue was:

> Is an award of statutory damages for intentional copyright infringement a willful and malicious "injury" within the meaning of section 523(a)(6) even where the district court stated explicitly that there were no actual damages?

20

The holding of the court was:

> [D]ebtor's obligation for statutory damages awarded against him upon finding that he had willfully and maliciously infringed creditor's copyright was non-dischargeable, as debt for debtor's willful and malicious 'injury' to creditor's property....

Other bankruptcy courts have held that statutory damages, as the District Court found in this case, for copyright infringement resulted in non-dischargeable debts. *Entrepreneur Media Inc. (In re Smith),* 2009 WL 7809005 (9th Cir. BAP 2009), *aff'd* 465 Fed.Appx. 707 (9th Cir. 2012) (holding that debt arising from an intentional trademark infringement is nondischargeable); *Gordon v. Weir*, 111 F.Supp. 117 (E.D. Mich. 1953) ("Where there has been a willful copyright infringement, the debt occasioned thereby is not dischargeable.") (cited in *Continental Map, Inc. v. Massier (In re Massier)*, 51 B.R. 229, 231 (D. Colo. 1985); *In re Mucci,* 458 B.R. 802, 813 (Bankr. D. Conn. 2011) (the court, citing *In re Smith,* stating that it "adopts the rationale of *Smith* that intentional copyright infringement is equivalent to an 'intentional tort' (probably most analogous here to a deliberate conversion) for *Geiger* purposes"); *In re Ahmed*, 359 B.R. 34 (Bankr. E.D. N.Y. 2005); But see, *In re Walker*, 477 B.R. 111, 118 (Bankr. E.D. Mo. 2012) (finding that even if the District Court found willfulness in the copyright infringement action there was not a sufficient finding of "maliciousness" to satisfy collateral estoppel in dischargeability proceeding).

Having found that the District Court determined by inference, although not having expressly said so, that there was an identity of issues of willfulness and maliciousness for purposes of both copyright infringement and collateral estoppel under § 523(a)(6), there still remains the required element for collateral estoppel that those issues were "actually

litigated."

### 3. Was The Issue of Willful and Malicious Injury "Actually Litigated"

The third element which must be established for a prior judgment to have preclusive effect is whether the matter in issue was "actually litigated." Elam, in conclusory fashion and without citation of legal authority to support it, states that the *Default Judgment* "was entered against her by default ... without representation ... and without hearing evidence from both the Plaintiff and the Defendant" so that "the issues were never litigated." [Adv. Doc. 19]. For its part, Plaintiff does not discuss the import of the preclusive effect of the judgment entered by default. Thus, neither party to any meaningful degree addresses the applicable law as to whether the "actually litigated" standard for collateral estoppel was met by the nature of a default judgment.

In *Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304 (2000), in holding that a consent judgment did not have issue-preclusive effect, the Supreme Court said: "In the case of a judgment entered by confession, consent, or *default*, none of the issues is *actually litigated*. Therefore, the rule of this Section [describing issue preclusion domain] does not apply with respect to any issue in a subsequent action."(quoting Restatement (Second) of Judgments § 27, comment *e*, at p. 257) (Emphasis added). "The context of the language quoted from the Restatement, however, makes clear that the type of' 'default' being considered was not a default imposed as a sanction but a default resulting from an affirmative decision not to contest a matter." *Corey v. Corey (In re Corey),* 583 F.3d 1249, 1251 (10th Cir. 2009).

The primary purpose of the doctrine of collateral estoppel is to "protect parties from

multiple lawsuits, prevent the possibility of inconsistent decisions, and conserve judicial resources." *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 624-25 (10th Cir. BAP 2005).  In the case of the classic default judgment, in which a court enters default against a party due to a failure to answer or respond to a complaint, neither party has borne the expense of discovery and litigation, beyond the initial filing of the complaint and the motion for a default judgment. No time is wasted preparing for trial and awaiting a decision.  Moreover, in considering the application of collateral estoppel, some courts acknowledge that a defendant may be focused on preparing for a future bankruptcy filing, assuming that any default judgment entered can be discharged through his bankruptcy. *In re Sukut,* 357 B.R. 840, 844 (Bankr. D. Colo. 2006) (citing *Evans v. Dunston (In re Dunston)*, 146 B.R. 269, 278 (D. Colo.1992)).

As a result, the federal courts have held, as a general rule, that a default judgment entered in a federal court will not support the application of collateral estoppel. *Arizona,* 530 U.S. at 414; *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 476 (10th Cir. BAP 1999) *aff'd*  2000 WL 783401 (10th Cir. 2000); *Sukut*, supra.; *In re Roberts*, 505 B.R. 555, 567 (Bankr. N.D. Okla. 2014) (state court default judgment not given preclusive effect in absence of sufficiently detailed factual findings and thorough legal analysis).

Several circuit courts, including the Tenth Circuit, have recognized an exception to this general rule "where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment." *Corey,* 583 F.3d at 1253; *Jordana,* 2000 WL 783401, at *1*; Federal Deposit Insurance Corp. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995); *Wolstein v. Docteroff*

*(In re Docteroff)*, 133 F.3d 210, 215 (3ʳᵈ Cir. 1997).  This exception does not apply in the present case because there is no evidence that Elam engaged in any obstructive behavior *prior* to the entry of the default, and the *Default Judgment* was not entered as a sanction for such misconduct.

Another exception to the general rule that default judgments are not entitled to preclusive effect is when the party against whom the default judgment was entered has actively or substantially participated in the action.  See e.g., *Seibert v. Cedar Rapids Lodge & Suites, LLC,* 583 B.R. 214, 220 (D. Minn. 2018); *In re Spielman*, 588 B.R. 198, 206 (Bankr. N.D. Ill. 2018); *Tacason, D/B/A Cutting Edge Sports*, 537 B.R. 41, 52 (1ˢᵗ Cir. BAP 2015); *Acevedo v. Wells Fargo Bank, N.A. (In re Acevedo)*, 2015 WL 1876857 at *3 (Bankr. D. Mass. 2015). These courts recognize the exception as such: "[I]f a party substantially participates in litigation *prior* to the entry of the default judgment, a federal court can apply collateral estoppel and prevent that party from relitigating the issues decided by the judgment." *Spielman,* 588 B.R. at 206 (quoting *International Strategies Group, Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 377 (Bankr. D. Mass. 2006). (Emphasis added).  Thus, the Court must now determine whether Elam participated to a sufficient degree in the District Court litigation to satisfy the "actually litigated" element and warrant application of collateral estoppel.

Elam, of her own choosing, did not participate in the litigation prior to the entry of the *Default Judgment*.  Within one business day after the entry of the *Default Judgment*, Elam embarked upon an aggressive challenge to the *Default Judgment* by filing numerous

24

pleadings.[8] Was this post-judgment participation sufficient to fulfil the requirement that the issue be "actually litigated?"

Virtually all of the authority that the Court has been able to find on the issue of whether the defaulting party had actively participated in the litigation for collateral estoppel purposes involved circumstances where at least some participation, in varying degrees, was engaged in by the defendant *prior* to entry of the default judgment. None of those defaults could be characterized as "true defaults" where the judgment had been entered without the defendant having filed an answer or otherwise appeared in the case. On the other hand, all of Elam's participation in the District Court Action occurred *after* the entry of the first *Default Judgment* on February 10, 2017. That *Default Judgment* was a "true" default judgment, a judgment entered solely because the defendant failed to file an answer or to take any steps to defend the action. In such a case, the Court would normally have little difficulty in finding that the *Default Judgment* was not "actually litigated" and therefore not entitled to preclusive effect. See e.g., *In re Phillips,* 434 B.R. 475, 486 (6th Cir. BAP 2010). The difficulty, however, in making such a finding in this case is that here there were *two* judgments: one the "true" *Default Judgment* entered on February 10, 2017, and the *Amended Default Judgment* entered on October 18, 2017, after Elam had actively

---

[8] Including: (1) *Motion to Vacate and Dismiss Complaints,* (2) *Motion to Clarify Motion to Vacate and Dismiss Complaints, Supplement to Motion to Vacate and Dismiss Complaints,* (3) *A Letter to the Court with Additional Evidence in Regards to Improper Delivery of Summons,* (4) *Defendant Elam's Response in Opposition to Plaintiff's Motion to Hold Defendant Elam in Contempt,* (5) *Defendant Elam's Response in Opposition to Plaintiff's Motion to Modify Injunctive Order,* (6) *Response to Motion for Order to Modify Injunction Based on Defendant's Willful Violation of the Court's Injunction and Continuing Infringement of Plaintiff's Copyrights,* (7) *Motion for Reconsideration on Changes in Injunctive Order*, and (8) two separate appeals to the Tenth Circuit Court of Appeals.

participated in attempting to vacate the first judgment.

Entry of the first *Default Judgment* on the Plaintiff's factual allegations was predicated on the well-established rule that in a default situation the court takes all of the well-pleaded facts in the complaint as true because "a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts." [District Court Action Doc.13, pg. 4].  As to the legal conclusions drawn from those uncontested facts, the District Court found that the allegations supported the entry of a default judgment because Plaintiff had established a prima facie case of copyright infringement based on the two necessary elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. [*Id.,* at pgs. 5-6].  The District Court then found that "the defendant's default under the decision not to defend against these allegations were grounds for concluding that her actions were willful." [*Id.*, at p. 6, citing e.g., *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1313 (S.D. Fla. 2003)].  It appears that the District Court found Elam's willful actions were premised upon her decision not to defend the case and not premised upon actually litigating the merits of the substantive requirements under the standards necessary for § 523(a)(6).

But the same cannot be completely said about the *Amended Judgment* entered on October 18, 2017, which superseded the "true" default of the *Default Judgment* entered on February 10, 2017.  After entry of the original *Default Judgment*, Elam undertook a two-year, more than five hundred (500) page, multi-pleading attack upon the judgment.  When Elam filed her *Motion to Vacate* the initial *Default Judgment*, she**,** in part**,** predicated the same upon the basis that she had not been properly served with summons, that the

Plaintiff and the process server had committed fraud, that Plaintiff's counsel had misspelled her name on an entry of appearance, and that Plaintiff was allegedly guilty of other improprieties or illegal activities.  On the merits of Plaintiff's claims, she also alleged that the Plaintiff's copyrights were invalid ("illegal") because the subject material was at all times in the public domain. [Adv. Doc. 18-4, pgs. 4-5].  Elam followed  this up with a *Supplement to Motion to Vacate and Dismiss Complaints* to which she attached Affidavits from two different parties which Elam contended supported her position that the Plaintiff's copyrights were invalid as the materials had been in the public domain for several years. [District Court Action Docs. 20-1 and 20-2].  While the District Court found that her *Motion to Vacate* "should be denied because she has not satisfied the threshold inquiry of showing that her culpable conduct did not cause the default,"  [District Court Action Doc. 23, p. 4], going to the merits of Elam's claims, it also stated that "in conclusory fashion, (Elam) states the copyrights at issue are invalid and Plaintiff's claims are barred by the statute of limitations.  As with her other arguments, (Elam) has presented no persuasive evidence in support of these contentions... and the Court finds they do not affect the validity of the default judgment obtained herein." [*Id*. at p. 6].

Thus, in considering Elam's *Motion to Vacate* and her *Motion for Reconsideration on Changes in Injunctive Order* the District Court afforded Elam "a second bite at the apple" to consider her claims as to the invalidity of the copyrights.  It found her claims to be insufficient.  The District Court's finding as to the validity of the Plaintiff's copyright claims is buttressed by its ruling upon the Plaintiff's *Motion to Modify Injunction* and Elam's response thereto wherein it found that Elam's continued refusal to abide by the Courts

previous injunctive relief required the expansion of the injunction from three to all thirty-one (31) of the materials in question.

As discussed above, courts have held that "one cannot commit intentional copyright infringement and, through his negligence, cause financial harm to the copyright holder. Rather, harm necessarily follows from the act of infringing regardless of the infringer's state of mind when creating the infringing material." *In re Braun*, 327 B.R. at 451. As stated in *Braun*: "[A]n award of statutory damages for copyright infringement is indicative of an injury. For this reason, Debtor's willful and malicious copyright infringement results in a nondischargeable debt under section 523(a)(6)." *Id.* at 452.

The Court finds that Elam's active participation in the case after entry of the original *Default Judgment* but preceding the entry of the *Amended Default Judgment* coupled with the District Court's rejection of her claims that the Plaintiffs did not hold valid copyrights and finding that Elam had infringed the same satisfies the "actually litigated" requirement to warrant the application of collateral estoppel.

## V. Conclusion

For the reasons stated above, the Court finds that all of the elements for collateral estoppel have been met, and the Plaintiff's *Motion for Summary Judgment* [Doc. 18] is hereby **Granted.** The statutory debts for copyright infringement are hereby declared non-dischargeable under § 523(a)(6).  Pursuant to Fed.R.Bankr.P. 7058(a) a separate judgment will be entered contemporaneously with this *Opinion and Order Granting Motion for Summary Judgment.*

# # #

28